IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PAMELA WHITT, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 2:18-00138-KD-M |
| ) | |
| GULFCO OF ALABAMA, LLC ) | |
| D/B/A TOWER LOAN, ) | |
| ) | |
|     Defendant. ) | |

**ORDER**

This action is before the Court on Defendant Gulfco of Alabama, LLC's (herein Tower Loan) motion to stay proceedings and compel arbitration, memorandum of law in support of motion, and the response filed by Plaintiff Pamela Whitt. (Docs. 7, 7-2, & 16). Upon consideration, and for the reasons set forth herein, the motion to compel arbitration is **GRANTED**. Accordingly, this action is **stayed.**

    I.   Background

On December 16, 2015, Pamela Whitt entered into a contract with Tower Loan for the purpose of obtaining a loan. (Doc.1-1, p. 5). The contract contained a binding arbitration provision providing:

> Borrower and Lender agree that they shall arbitrate all disputes between them on the following terms … This arbitration agreement applies to all claims and disputes between Borrower and Lender. This includes but is not limited to, all claims and disputes arising out of, in connection with, or relating to … [a]ll claims or disputes based upon Federal or State laws or regulations.

(Doc. 8-1, p.10). The arbitration provision also contained what is frequently referred to as a "delegation clause", which stipulates any questions regarding the validity of the arbitration provision or whether a claim must be arbitrated, shall also be determined through arbitration.

(Id.). Further, it stated that the arbitration provision is never discharged, "even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy." (Id.). Whitt paid this loan in full in June 2016. (Doc. 1-1, p. 5).

On September 19, 2016, after the initial loan was discharged, Tower Loan alleges Whitt entered into a second loan agreement by cashing a "Loan at Home" check. (Doc. 7, p. 2). Tower Loans states the check was sent to Whitt via mail and argues that by signing the check, Whitt agreed to the check's terms and conditions. (Id. at 3) In the First Amended Complaint and the response, Whitt denies ever having signed the check and thus denies agreeing to the terms and conditions, but no evidence was produced to support this denial. (Doc. 1-1, p. 6, Doc. 16, p. 1-2). The contract terms of the check include an arbitration provision similar to the initial loan. (Doc. 8-1, p. 14).

Sometime following Whitt's discharge of the initial loan and the alleged signing and cashing the Loan at Home check, Tower Loan allegedly began using an automated telephone dialing system to contact Whitt about her outstanding balance under the Loan at Home check. (Doc 1-1, p. 6). Whitt denied responsibility for both the loan and the outstanding balance and explicitly revoked any consent Tower Loan may have had to contact her by telephone. (Id.). Tower Loan allegedly continued to contact Whitt by telephone, and Whitt claims to have received upwards of 50 unwarranted calls and text messages. (Id. at 7).

On January 10, 2018, Whitt filed this action against Tower Loan in the Circuit Court of Dallas County, Alabama. (Id. at 2-3). Whitt asserted causes of action for multiple violations of the Telephone Consumer Protection Act (TCPA) for Tower Loan's continual nonconsensual contact via telephone. (Id. at 8-9). Whitt alleges that this contact was so frequent that it qualifies

as harassment under the Collections Agency Act and gives rise to valid claims under the TCPA. (Id. at 4).

On March 23, 2018, Tower Loan removed the action to this Court. Tower Loan removed pursuant to 28 U.S.C. §§ 1331 and 1441 as Whitt's claims originate under the TCPA, a federal law. On March 28, 2018, Tower Loan moved to compel arbitration citing the arbitration provision of the Loan at Home check, and alternatively, the arbitration provision of the initial loan. (Doc. 7). Tower Loan's motion to compel arbitration is now pending before the Court.

II.  Statement of the law

In accordance with the Federal Arbitration Act (FAA), "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. §2. To be subject to the FAA, an arbitration provision must be part of a valid contract and said contract must concern a transaction involving interstate commerce. Id. The connection to interstate commerce need only be slight. 9 U.S.C. §1.

Prior to the FAA, some courts were notably unreceptive towards arbitration agreements. Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 (1974). To combat this inclination, the FAA was passed creating "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983). Courts now must "rigorously enforce arbitration agreements." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 220 (1987). The Supreme Court has since stated that the FAA declared federal policy so in favor of compelling arbitration that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

The text of the arbitration provision determines the permissible scope of the provision. A party may be compelled to have their claims submitted to arbitration if the party has explicitly agreed to submit their claim to arbitration. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 664 (2010). Pursuant to federal policy heavily favoring arbitration, a party must explicitly express their intention to omit a certain class of claims from being subject to an arbitration provision. Id.

Additionally, parties may also agree to arbitrate any gateway disputes regarding the arbitration provision itself. Jones v. Waffle House, Inc., 866 F.3d 1257, 1264 (11th Cir. 2017) Through a "delegation clause", parties consent to any issues regarding the arbitration provision's validity, scope, or applicability being resolved by an arbitrator. Id. A delegation clause is a supplemental agreement to the arbitration provision and is binding under the same FAA terms as the arbitration provision. Id. Therefore, a delegation clause is unenforceable only if the arbitration provision is not valid under the requirements of the FAA. Id.

After the moving party has established the existence of a valid contract and arbitration provision, the party opposing the motion to compel arbitration ultimately bears the burden of proving why the Court should not grant the motion to compel. Family Sec. Credit Union v. Etheredge, 238 So. 3d 35, 38 (Ala. 2017) (citing TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999)). In this Circuit, state law determines the opposing party's burden of proof and under Alabama law a motion to compel arbitration shall be treated "analogous to a motion for summary judgement." Id. Therefore, when evaluating the merits of a motion to compel arbitration, the court should not rely on statements in motions or briefs, but rather the evidence submitted.[1] Scurtu v. Int'l Student Exch., 523 F. Supp. 2d 1313, 1319 (S.D. Ala. 2007). If the

---

[1] "Where a nonmovant seeks to meet its burden by proving that an agreement to arbitrate is invalid, Alabama courts have cautioned that '[s]tatements in motions and briefs are not evidence to be considered by the trial court in ruling

opposing party presents no evidence in support of their opposition, the court shall grant the motion. Id.

### III. Analysis

Tower Loan moves the Court to compel Whitt to arbitrate her claims against Tower Loan and to either stay this action or dismiss these claims without prejudice. (Doc. 7). Tower Loan argues that the binding arbitration provisions of both the first and second loan apply to Whitt's current claim; therefore, applying either provision, Whitt must arbitrate her claims against Tower Loan. (Id. at 2-3). Further, Tower Loan argues that both arbitration provisions are subject to enforcement under the FAA as they are both part of contracts that are valid and involve interstate commerce. (Id. at 3).

Whitt responds that because the first loan has been paid and discharged, the arbitration provision of the loan is null and thus inapplicable. (Doc. 16, p. 2). Additionally, Whitt argues that she did not sign and cash the latter Loan at Home check, therefore she cannot be bound by the arbitration provision found in the check's terms and conditions. (Id. at 1-2). Whitt also argues that per the FAA, the proper manner to resolve any dispute regarding an arbitration provision's validity is a trial. (Id. at 2). Therefore, Whitt contends, any doubts regarding whether the arbitration provision is valid or applies to the current dispute should be determined by the Court and not through arbitration.

As to the applicability of the arbitration provision of the first loan, the Court finds that this is a question to be resolved through arbitration itself. Through the delegation clause of this

---

on a motion to compel arbitration' and that properly supported motions to compel arbitration should be granted if the nonmovant presents no opposing evidence." Scurtu 523 F. Supp. 2d at 1319 (quoting Providian Nat. Bank v. Conner, 898 So. 2d 714, 719–20 (Ala.2004) (internal citations and quotations omitted)).

loan's arbitration provision, Whitt has affirmatively agreed to arbitrate the threshold issue of this arbitration provision's applicability to any given dispute.

Traditionally, trial would be the proper way to resolve an issue of arbitrability, however, through the delegation clause Whitt has consented to such issues being resolved through arbitration instead. Per the contract's terms, the arbitration provision, and thus the delegation clause, is never discharged, even when the overarching loan has been paid in full. Therefore, the fact that Whitt had completed payments on the loan bears no weight on the arbitration provision and the delegation clause's applicability and she may be compelled to arbitration to determine whether her current claim falls within the scope of the initial loan's arbitration provision.

As to the Loan at Home check, the arbitration provision of that contract is binding and enforceable if it is a part of a contract that is valid and involves interstate commerce. As Tower Loan has highlighted, a Mississippi corporation with a principal address in Mississippi funds their loans. (Doc. 7-2, p. 9). The required connection to interstate commerce need only be slight and this connection more than satisfies the interstate commerce requirement. *See* 9 U.S.C. §1. The only question then is if the contract is valid.

Whitt claimed in the First Amended Complaint that she did not sign and cash the Loan at Home check. (Doc 1-1, p. 6). In Whitt's response, she again states that she did not sign and thus, did not agree to the contract's arbitration provision. However, Whitt produced no evidence to support this claim.[2] The State of Alabama treats motions to compel arbitration analogous to a motion for summary judgement. Family Sec. Credit Union v. Etheredge, 238 So. 3d at 38. So, when ruling, the Court cannot rely on factual statements made in motions or briefs that are not supported by evidence. Because Whitt's claim is unsupported outside of her complaint, the Court

---

[2] Whitt did not supplement her claim with any supporting evidence. An affidavit or declaration by Whitt would have sufficed to support this claim. Fed. R. Civ. P. 56(c)(1).

has no evidence to support Whitt's opposition to Tower Loan's motion to compel arbitration. Therefore, Whitt has not satisfied her burden of proof. Accordingly, the Court finds that the contract is valid for purpose of the applicability of the arbitration provision.

IV. <u>Conclusion</u>

Upon consideration of the foregoing, Tower Loan's motion to compel arbitration (doc. 7) is **GRANTED** and the plaintiff's claims are referred to arbitration in accordance with the terms of the Loan at Home contract. Accordingly, the motion to stay proceedings is **GRANTED**.  The parties are **ORDERED** to file a **status report** on or before **December 21, 2018**.

**DONE** and **ORDERED** this 21st day of June 2018.

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**